**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JULIA ZVEREVA** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Case No. 5:26-CV-04943** |
| v. | § | |
| | § | |
| **SAFARI CLUB INTERNATIONAL** | § | |
| | § | |
| *Defendant* | § | |

## <u>ORIGINAL COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Julia Zvereva ("Dr. Zvereva") files this her Original Complaint against Safari Club International ("SCI") and respectfully shows the Court as follows:

### I.
#### INTRODUCTION

1.      Plaintiff Julia Zvereva was a respected wildlife biologist, master measurer, and long-time volunteer leader within Safari Club International ("SCI") and the greater hunting community whose professional standing and hard-earned reputation are at the heart of this case. She now finds herself the target of a campaign in which SCI's ethics machinery has been weaponized to attack a fellow SCI member, renowned international hunter Aleksandr Egorov, leaving her as collateral damage in the process. As a result of this weaponization of SCI's Ethics Committee proceedings, false and defamatory statements about Dr. Zvereva have been circulated within the hunting and master measurer community, causing significant harm to her name, her standing among record-book hunters and measurers, and the legacy she

built over decades of service. This lawsuit is brought to vindicate Dr. Zvereva, to clear her good name, and to restore the standing she has earned in the international hunting and master measurer community.

## II.
### PARTIES

2.      Plaintiff Zvereva is an individual who is a resident and citizen of Russia.

3.      Defendant SCI is a nonprofit corporation with its principal place of business located at 654 Richland Hills Dr., Suite 160, San Antonio, Texas 78245.

## III.
### JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Defendant SCI because its principal place of business is located in San Antonio, Bexar County, Texas.

5.      This Court has subject matter jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because this suit is between (1) a citizen of a foreign state who is not a lawfully admitted permanent U.S. resident domiciled in the same U.S. state and (2) citizen of a U.S. state.  The amount in controversy exceeds $75,000 excluding interest and costs.

6.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) because Defendant SCI resides in the district, and has its principal place of business located at 654 Richland Hills Dr., Suite 160, San Antonio, Texas 78245.

## IV.
### FACTUAL BACKGROUND

## A.  Dr. Zvereva's Exceptional Career and Impeccable Reputation

2

7.     Plaintiff Julia Zvereva is a respected wildlife biologist and internationally recognized leader in the Safari Club International ("SCI") Record Book community, and the international hunting community as a whole, with more than two decades of experience in hunting, wildlife measurement, and conservation-related activities. Since the early 1990s, Dr. Zvereva has been involved in organizing hunting tours and supporting trophy hunting as a means of promoting ethical hunting and wildlife appreciation. Beginning in approximately 2007–2008, she became an official SCI measurer and later a master measurer, following completion of SCI measurers' seminars, master measurer courses, and specialized trainings on the measurement of complex and difficult trophies.

8.     Dr. Zvereva's expertise and reputation within SCI are well documented. For roughly fifteen years, members of the SCI Record Book Committee—including the Sub-Chair for Europe—relied on Dr. Zvereva's incredible vast and deep expertise on scientific and measurement questions concerning animals entered into the SCI Record Book, drawing on the academic background she and her husband, Eugene, possess as wildlife biologists working at an official Russian university. In describing Dr. Zvereva's impact, one longtime committee member explained that, within SCI, there was a time of "Russia and SCI prior to Julia" and "one after Julia joined the ranks," reflecting the transformative role she played in opening SCI's Record Book to the Russian and broader international hunting community.

9.     Over the course of her volunteer service, Dr. Zvereva personally recruited and convinced more than 200 hunters to become SCI members, assisted

3

them with their membership and award program submissions, and ensured that their trophies were timely entered into SCI's Record Book and award systems. She personally measured well over 1,000 animals for the SCI Record Book, making her one of SCI's top five official measurers worldwide—and likely among the top three when accounting for the fact that many other top measurers are professional taxidermists who measure trophies as a paid service. On many occasions at SCI Conventions, Dr. Zvereva would be honored on the main stage before a crowd of thousands of attendees as one of, or the, "Top Measurer of the Year."

10.    Dr. Zvereva performed this work almost entirely as a volunteer. She devoted thousands of hours to measuring trophies in Russia and abroad, paid for her own travel to and from measuring seminars and conventions, and annually traveled to the United States to attend SCI's Convention and work at the SCI Trophy Records booth alongside the staff of the SCI Trophy Records Department. Based upon membership dues, Record Book entry fees, award fees, medallion purchases, and related revenues generated through her activities, SCI received substantial financial benefits from Dr. Zvereva's volunteer work.

11.    In addition to her measuring work, Dr. Zvereva has played a key role in training other measurers and expanding SCI's reach. She attended SCI measuring seminars with Russian hunters as their interpreter, translated SCI measuring manuals and answer sheets into Russian, and trained prospective measurers by jointly measuring dozens of trophies at trophy rooms and hunting shows. SCI relied on her to travel specifically for measuring purposes, including trips within Russia

4

(such as to Vladivostok, Krasnodar, and Moscow) and abroad to places such as Texas, Great Britain, Mongolia, Finland, Spain, Namibia, and South Africa. At SCI's proposal, she served as a measurer in Mongolia, where she measured trophies taken over several seasons, including world champions and top-ranked entries.

12.    Dr. Zvereva has also contributed to SCI's programs and publications. Together with her husband, she participated in developing SCI's bird program, undertaking substantial voluntary work that was accepted and used by SCI. She translated into Russian and improved SCI's award program guide—adding additional data to make it more useful to hunters—and arranged for its printing and distribution among Russian hunters to facilitate their hunt planning and award participation. She further promoted SCI by writing articles in print and online hunting media, highlighting SCI's opportunities and encouraging hunters to register not only their largest trophies but all qualifying animals.

13.    Dr. Zvereva's reputation extends far beyond SCI itself. She is well known not only within SCI but also among professional wildlife biologists, hunting outfitters and organizers, official and master measurers, and the international hunting community generally.

14.    These activities demonstrate that Dr. Zvereva is widely regarded as an ethical, diligent, and highly knowledgeable professional within the SCI and throughout international hunting communities. Her reputation as a trusted measurer and advocate for SCI is the product of decades of sustained voluntary service, professional expertise, and close collaboration with SCI's Record Book

Committee and Trophy Records Department. The defamatory statements at issue in this lawsuit directly attack the core of that hard-earned professional and personal reputation.

### B. The Malicious, Retaliatory, and Rule-Defying Ethics Proceeding

15.    In recent years, a fellow SCI Member Aleksandr Egorov ("Egorov"), through his service on the boards of directors and selection committees of the Conklin and Weatherby Foundations, was involved in verifying the legality of trophies. This responsibility occasionally required Egorov to expose serious rules violations committed by other hunters, including influential, U.S.-based figures. Egorov subsequently received explicit threats from certain individuals who were denied prestigious awards as a direct result of his findings.

16.    Seeking personal retribution, these hostile individuals subsequently abused SCI's ethical complaint mechanism. Rather than acting as a neutral arbiter, SCI willingly allowed its process to be utilized as an instrument of personal retaliation.

17.    On April 9, 2024, Egorov received notice of a complaint from Richard Parsons, legal counsel for SCI's Ethics and Code of Conduct Committee, alleging that SCI had received an ethics complaint concerning "multiple SCI Record Book entries that appear to violate SCI record book policies" (the "Egorov Complaint").  On the same day, Dr. Zvereva was sent a similar notice (the "Zvereva Complaint").

18.    The "evidence" third parties submitted to SCI in support of the Complaint was entirely speculative, unreliable, and of a type that would never be

admissible in any court of law. The Complaint was based on statements from individuals who lacked personal knowledge of the underlying hunts or of the conduct of certified measurers.

19.    In launching and pursuing this disciplinary proceeding, SCI flatly violated its own constitutional bylaws. Section 2.4 of the SCI Bylaws explicitly states:

*"No complaint shall be considered if more than three years have elapsed from the time of the alleged violation to the date the Complaint is made."*

20.    The stale accusations pursued by SCI in the Zvereva Complaint concerned two ten-year-old SCI score sheets signed by Dr. Zvereva, each bearing an SCI date stamp of February 9, 2015. One score sheet involved a mountain caribou taken in the Yukon, Canada, and the other involved a moose from the Yukon, Canada. Both trophies scored well below any benchmark for record-book consideration and were ordinary, low-ranking heads that offered no conceivable advantage to Mr. Egorov in any awards, standings, or SCI recognition.  SCI's leadership had actual knowledge of Section 2.4 of its Bylaws, yet deliberately chose to suspend and violate its own binding time-bars to target Dr. Zvereva, executing a predetermined, retaliatory outcome.

21.    In response to the notice of complaint, Dr. Zvereva cooperated fully and made every effort to provide comprehensive explanations.  When asked to provide specific details of the score sheets at issue, SCI provided the two score sheets referenced above.  Dr. Zvereva was able to confirm that these score sheets (along with a batch of other score sheets relating to other hunters) were submitted in person at

the SCI 2015 Convention in Las Vegas Nevada. She explained that the score sheets at issue were in fact signed by her at the request and approval of SCI. Although she did not measure these animals, the support for the measurements were included when submitted providing the measurement sheets signed by the hunter who harvested the animal (a master measurer), the outfitter (Craig), and the professional hunter (Ted) on these hunts, allowing Dr. Zvereva to confirm the accuracy of the measurements she was asked to sign off on with the approval of SCI. Despite Dr. Zvereva's cooperation, the clear time-bar, and the absolute lack of credible evidence, SCI's governing body—acting with ill-will, actual malice, and in reckless disregard of the facts—voted to expel Dr. Zvereva in May 2025.

### C. The Defamatory Publication in the *Safari Times*

22.    To maximize the damage to Dr. Zvereva's reputation, SCI published notice of Dr. Zvereva's permanent expulsion in the August 2025 print and digital editions of its flagship publication, *Safari Times*, which is distributed directly to approximately 135,000 SCI members globally and read by thousands of non-members through pass-along readership.

23.    In the August 2025 edition of the *Safari Times*, SCI published the following false and defamatory statements of fact concerning Dr. Zvereva claiming:

> *"Ms. Zvereva . . . falsified entries into the SCI Record Book on more than one occasion."*

24.    SCI's published statements about Dr. Zvereva were false, defamatory, and unsupported by competent and admissible evidence.

25.     SCI published the Defamatory Statements with actual malice, with subjective knowledge of their falsity or with reckless disregard for whether they were true or false, and with a purposeful avoidance of the truth.

26.     The two score sheets at issue were submitted to SCI per the express instructions and approval of SCI with the supporting measurements made by the hunter who harvested the animal, the outfitter, and the professional hunter, yet SCI published accusations as established facts.

27.     As mentioned above, SCI further disregarded its own bylaws, which prohibit consideration of complaints filed more than three years after the alleged events unless criminal or other official judicial proceedings concerning the alleged violation are pending until final adjudication.

28.     The accusations concerned two alleged score sheets containing SCI's date stamp of February 9, 2015.  SCI nevertheless ignored the limitations period contained in its own bylaws and disciplinary rules and pursued disciplinary proceedings based upon stale allegations that should have been barred under SCI's governing documents.

29.     Under these circumstances—where the only submissions at issue were two inconsequential score sheets for ordinary, low-ranking Yukon trophies that could not move Mr. Egorov's standings or add anything to his hunting résumé—Dr. Zvereva had no rational motive to risk her name, legacy, longstanding reputation, or international standing over the paperwork for two routine heads submitted with the direct involvement with SCI.  These facts demonstrate the absence of any rational

9

basis for the alleged conduct and underscore the implausibility of the accusations made against Dr. Zvereva.

30.    On information and belief, the false and defamatory statements were distributed to approximately 135,000 SCI members worldwide and reached a readership substantially greater than its membership.

31.    SCI's publication of false accusations against Dr. Zvereva caused severe reputational harm within the international hunting and conservation communities.

32.    SCI's statements constitute defamation per se under Texas law because SCI directly accused Dr. Zvereva of fraud, dishonesty, falsification, and unethical conduct in the very field in which her reputation was built.

33.    As a direct and proximate result of SCI's conduct, Dr. Zvereva has suffered substantial reputational harm, emotional distress, humiliation, and injury to longstanding professional and personal relationships throughout the world. SCI's statements have damaged her name, standing, status, achievements, and relationships within the international hunting and conservation communities and have impaired her ability to participate fully in the community.

## V.
### CAUSES OF ACTION

**Count 1 – Defamation and Defamation *Per Se***

34.    Dr. Zvereva repeats, realleges, and incorporates the above paragraphs as though fully set forth herein.

35.    SCI published statements of fact in the August 2025 *Safari Times* that expressly referred to Dr. Zvereva. Specifically, SCI published that Dr. Zvereva

10

falsified entries in the SCI Record Book on more than one occasion.  This statement is factually false and highly defamatory.

36.    SCI published these false statements to third parties, including its 135,000 members and the broader public, via its print and digital circulations.

37.    SCI acted with actual malice, having subjective knowledge of the statements' falsity or acting with reckless disregard for the truth, characterized by a purposeful avoidance of the truth, bad-faith violation of its own bylaws, and refusal to inspect the physical evidence.  Alternatively, SCI acted with negligence.

38.    SCI's statements constitute defamation *per se* because they impute dishonesty, fraud, and deceit to Dr. Zvereva in her profession, trade, and the highly specialized field of international hunting and conservation where her reputation is paramount.

39.    As a direct and proximate result of SCI's publication of these false and defamatory statements, Dr. Zvereva has suffered severe general and special damages, including catastrophic injury to her personal and professional reputation, character assassination, mental anguish, humiliation, and the loss of invaluable professional and personal relationships throughout the world.

## VI.
### CONDITION PRECEDENT

40.    All conditions precedent have been performed or have occurred.

## VII.
### PRAYER

41.     For these reasons, Plaintiff Julie Zvereva respectfully requests that Defendant Safari Club International be cited to appear and answer herein, and that Dr. Zvereva be awarded a judgment against SCI for the following:

asks for judgment against Defendant for the following:

      a.    Actual, compensatory, and nominal damages in excess of $75,000;

      b.    Exemplary and punitive damages as allowed by law;

      c.    Prejudgment and post judgment interest;

      d.    Cost of suit; and

      e.    Such other and further relief, at law or in equity, to which Dr. Zvereva may show herself justly entitled.

## VIII.
### JURY TRIAL DEMAND

42.     Dr. Zvereva demands a trial by jury for all claims and issues that are so triable.

Dated:  July 31, 2026

Respectfully submitted,

CHISCANO HOSSA & CALVE, PLLC
9601 McAllister Freeway, Suite 401
San Antonio, Texas 78216
Telephone: (210) 560-0006

By:     */s/ Steve A. Chiscano*
      STEVE A. CHISCANO
      State Bar No. 24001882
      steve@lawCHC.com
      WILLIAM CALVE
      State Bar No. 24096505
      billy@lawCHC.com
      NADEEN ABOU-HOSSA

State Bar No. 24115449
nadeen@lawCHC.com

**ATTORNEYS FOR PLAINTIFF
JULIE ZVEREVA**